Dear Representative Burrell:
This office is in receipt of your letter dated November 2, 2007 requesting an Attorney General Opinion regarding distribution of riverboat gaming revenues, specifically pursuant to R.S. 27:93 A. (2)(g).
Your question, as I understand it, is which entity, the City of Shreveport or the MultiCultural Center for the South, can "claim jurisdiction over the funds", which is the sum of $200,000 annually, as referred to in Paragraph (g).
R.S. 27:93 A. (1) provides in part:
 The local governing authority of the parish or municipality in which the licensed berth of a riverboat is located may levy an admission fee of up to two and one-half dollars for each passenger boarding or embarking upon a riverboat. . . . .
Thus the City of Shreveport is authorized by the legislature to levy an admission fee of up to $2.50 per passenger boarding a riverboat berthed within the municipality's borders. Presently two licensed gaming riverboats are berthed and operating within Shreveport's borders, namely Sam's Town Shreveport and El Dorado Resort Casino Shreveport. Although the statute authorizes governing authorities to levy a per head boarding fee, most licensed riverboats in the state have entered into "percentage of adjusted gaming revenue" agreements with the governing authorities. The City of Shreveport has entered into contracts with each of these two boats and receives a percentage of adjusted gaming revenue, instead of the boarding fee.
R.S. 27:93 contains numerous provisions directing allocation of percentages and amounts of gaming revenue received by the various governing authorities. *Page 2 
R.S. 27:93 A. (2) contains all provisions applicable to Bossier and Caddo Parishes and the City of Shreveport specifically:
 (2) Funds derived from the admission fee which the local governing authority of the parishes of Caddo and Bossier or the municipality of Shreveport may levy for each passenger in accordance with Paragraph (1) of this Subsection, when the riverboat is licensed to operate within their jurisdiction, shall be allocated as follows:
 (a) Eighty percent of the revenues collected within the parish of Bossier, other than Bossier City, to the governing authority where the boat is located; sixty-nine percent of the revenues collected within the parish of Caddo to the governing authority where the boat is located.
 (b) Twelve and one-half percent of the revenues collected within the parish of Caddo to the Caddo Parish Commission.
 (c) Four percent of the revenues collected within the parish of Caddo to the Greater Shreveport Economic Development Foundation.
 (d) Twelve and one-half percent of the revenues collected within the parish of Caddo to the Caddo Educational Excellence Fund, as provided in R.S. 17:408.1.
 (e) Five percent of the revenues collected within the parish of Bossier to the Johnny Gray Youth Shelter.
 (f) Fifteen percent of the revenues collected within the parish of Bossier to the Bossier Parish School Board to be used solely for the use and purpose of the Bossier Education Excellence Fund, as provided in R.S. 17.408.2.
 (g) Two hundred thousand dollars shall be allocated annually for the acquisition of land, construction, maintenance, and operation of a multicultural center to be located within the city limits of Shreveport.
 (h) Two percent of the revenues collected within the parish of *Page 3 
Caddo to the Caddo Parish Ward II Industrial Development Corporation.
Paragraph (g) is differently worded in that in all of the other paragraphs in this subsection there is a specific reference to "revenues collected within the parish of Caddo (or Bossier)". Paragraph (g) appears applicable to the City of Shreveport in two ways. First it refers to a multicultural center to be located "within the city limits of Shreveport". Secondly, adding up all the allocation percentages applicable to Caddo Parish in paragraphs (a), (b), (c), (d) and (h), equals one hundred percent.
Accordingly, and in answer to your question, the City of Shreveport is authorized to levy an admission fee per passenger and has instead entered into a percentage of adjusted gross revenue agreement with each of the two riverboats in its city limits.
Paragraph (g) is a requirement imposed by the legislature ostensibly on the City of Shreveport to allocate two hundred thousand dollars a year to "a" multicultural center to be located within the city limits of Shreveport. It should be noted that the statute does not refer specifically to the "MultiCultural Center for the South" but only to "a" multicultural center. It would also seem therefore that the MultiCultural Center for the South does not have any direct right or claim to these funds under the statute, since the funds are not specifically allocated to it in the statute. However, the Multicultural Center for the South may have a right or claim to the funds under agreement(s) it has entered into with the City. This Opinion specifically does not address those contractual issues.
It should be noted that R.S. 27:93 A.(2) makes specific reference to a number of entities which are expressly designated to receive an allocation of funds received by the respective governing authority. For example, in subparagraph (e), five percent of the revenues collected within the parish of Bossier (are to be) allocated to the Johnny Gray Youth Shelter. It would appear that similar legislative language could specifically designate the Multicultural Center for the South as an intended recipient of funds collected by the City of Shreveport.
Hopefully this Opinion addresses your concerns. If you have any additional questions please feel free to call.
 Sincerely,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY:__________________________ Thomas A. Warner III Assistant Attorney General